**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DIANA L. MORALES,<br><br>Plaintiff,<br><br>v.<br><br>Acting Commissioner of the Social Security Administration,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CAUSE NO.: 1:17-CV-21-TLS |

## OPINION AND ORDER

Diana Morales appeals the denial of her application for supplemental security income (SSI). For the reasons set forth in this Opinion and Order, the matter is remanded for further proceedings.

## BACKGROUND

The Plaintiff was born in 1963 and has a ninth grade education. She has worked in the past as a cashier, deli worker, and fruit packer. In June 2013, at the age of fifty, the Plaintiff applied for SSI. She alleged that she was unable to work due to past cerebral aneurysm, Barrett's esophagus, chronic back pain, high blood pressure, chronic obstructive pulmonary disease, depression, and arthritis. The Commissioner denied her initial application for disability benefits, and her request for reconsideration. On March 13, 2014, she filed a request for hearing.

An ALJ conducted a hearing on August 20, 2015. In a decision issued on September 14, 2015, the ALJ denied her claim. Applying the five-step analysis used to evaluate disability, *see* 20 C.F.R. § 404.1520(a)–(g), the ALJ found that: (1) the Plaintiff had not performed substantial work since the application date; (2) several of her impairments were severe under the

regulations; (3) the medically determinable impairments did not equal a listed impairment; (4) she was unable to perform any of her past work; and (5) she was "able to perform work existing in significant numbers in the national economy," such as survey worker, dealer accounts investigator, and bonder. (R. 38.)

On September 30, 2015, the Plaintiff requested a review of the hearing decision with the Appeals Council, which subsequently affirmed the decision of the ALJ on December 15, 2016. On January 20, 2017, the Plaintiff filed a complaint for judicial review pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The Plaintiff asserts that remand is necessary because the ALJ committed error during step five when she relied on findings that were inconsistent with and unsupported by the

vocational expert's (VE) testimony, and when she failed to ask the VE whether any of her testimony conflicted with the Dictionary of Occupational Titles (DOT). The Defendant responds that no remand is necessary because, although the ALJ cited to the wrong VE testimony, this constitutes harmless error, as does the failure to inquire about conflicts. The Defendant argues that, because the VE's testimony provides substantial support for the ALJ's findings, and because there was no actual or apparent conflict with the DOT, the ALJ would reach the same result on remand.

The Commissioner bears the step-five burden of establishing that the claimant can, considering her residual functional capacity (RFC), age, education, and work experience, perform other work that "exists in significant numbers in the national economy." 20 C.F.R. § 414.960(c). In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy. An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. *See* 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Social Security Ruling (SSR) 00–4p requires an ALJ who takes testimony from a VE or vocational specialist (VS) to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VEs or VSs and information provided in the Dictionary of Occupational Titles (DOT)." To this end, the Ruling sets out the ALJ's affirmative

duty:

> *The Responsibility To Ask About Conflicts*
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> •Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> •If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 004-p. In this case, a review of the transcript from the administrative hearing reveals that the ALJ asked the VE which jobs were compatible with certain hypothetical limitations, but did not ask whether the VE's analysis conflicted with the DOT. This was error. *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (noting that SSR 00-4p unambiguously sets out the ALJ's affirmative duty to inquire about conflicts before the ALJ can rely on a VE's testimony).

Contrary to the Defendant's argument, this affirmative duty is not dependent on whether there are any "apparent conflicts" between the testimony and the DOT. (Def.'s Mem. 6, ECF No. 20.) *Overman v. Astrue*, a cased cited by the Defendant is distinguishable. There, the ALJ in fact satisfied the first step of his affirmative duty by asking the VE if his testimony was consistent with the DOT. 546 F.3d 456, 463 (7th Cir. 2008). As it turned out, the VE's assurance that it was consistent was incorrect. *Id.* The issue then became whether the ALJ failed to satisfy the additional duty to recognize an "apparent unresolved conflict," SSR 00-4p, despite the VE's assurances, and to "elicit a reasonable explanation for the conflict" *Overman*, 546 F.3d at 463 (quoting SSR 00-4p).

Before a court should remand on the basis of such an error, however, it must consider

whether to do so would lead to the same result on remand. "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *see also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding that the ALJ's failure to ask the VE if his testimony conflicted with the DOT was harmless because there was no actual conflict); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (holding that the failure to inquire about conflicts was harmless error because the "DOT's descriptions of the jobs that the vocational expert discussed [did] not conflict with the hypothetical limitations given by the ALJ).

Here, the ALJ asked the VE to identify light duty work that would not require lifting more than ten pounds and could be done either sitting or standing, therefore allowing for alternating between the two without leaving the workstation or stopping work activity. The DOT does not address the sit/stand option, but the VE identified three jobs that qualified based on the ALJ's hypothetical. The Plaintiff's counsel then inquired if those same jobs could be performed if another restriction were added: that the person have only occasional interaction with the general public, supervisors, and coworkers. That restriction is indeed part of the RFC that the ALJ assessed for the Plaintiff. The VE testified that it would eliminate the first two jobs, but that it would not affect the third, identified as "bonder." The VE then replaced the two eliminated positions with two other jobs, a laundry article sorter and a production solderer. However, the ALJ did not adopt this testimony in her written decision, and instead cited the first list of jobs the VE identified, apparently by mistake. Therefore, only one position cited in the written decision,

bonder, was actually identified by the VE as a job that could be perform in light of the Plaintiff's RFC.

The Defendant argues that it was harmless error to cite to the wrong testimony because the correct evidence is in the record and directly supports the ALJ's finding, and because the ALJ's written decision properly identifies the occupation of bonder, which itself represented 200,000 jobs nationally. Moreover, because the DOT does not address the sit/stand option, the DOT cannot be in conflict with, or inconsistent with, the VE's testimony.

The Defendant correctly notes that VE testimony "can include information not listed in the DOT" to provide a reasonable explanation for conflicts. SSR 00-4p. However, this says nothing about whether a conflict exists in the first place. In *Zblewski v. Astrue*, the Seventh Circuit held, in an unpublished opinion, that "[b]ecause the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT." 302 Fed. Appx. 488, 494 (7th Cir. 2008). This is not the same as saying that there is no conflict between a VE's testimony and the occupational information supplied by the DOT if the DOT does not supply such information because, in *Zblewski,* the issue before the court was whether the conflict was so apparent that it triggered the ALJ's duty to inquire further. Thus, while the Court can say that there was no apparent conflict surrounding the sit/stand option, it cannot say that no actual conflict exists. And it is the ALJ's failure to inquire that leaves this unknown.

It is troubling to the Court that the Plaintiff has not identified any conflict with the bonder position and her RFC, or any conflict with the bonder position and the DOT. However, it also seems that an ALJ's duty to ask the VE about conflicts with the DOT becomes even more important where the testimony concerns a limitation that is not included in the DOT because the

basis of the testimony is, obviously, not the DOT. Moreover, although the Plaintiff has not argued that the hypothetical that was posed when the VE identified the bonder position the second time failed to account for all of her limitations, the hypothetical itself was not clear, at least not as clear as the Seventh Circuit has said is required. The ALJ asked the VE to identify "light work that can be done either sitting or standing, and thus would allow a person to alternate between sitting and standing without leaving the workstation or stopping work activity." (R. 74.) This language does not specify a particular frequency for changing positions from sitting to standing, or include an "at will" option. *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (holding that RFC was not sufficiently specific where it required the plaintiff to be able to alternate between sitting and standing "throughout the workday" because it did not specify a particular frequency or require that the plaintiff be able to choose her position as she deemed necessary). It was appropriate to consult a VE to determine if jobs existed that met the Plaintiff's need to alternate between sitting and standing. *See* SSR 83-12 (noting that an adjudicator should consult a VE where the extent that a certain restriction, like the need to alternate between siting and standing, erodes the occupational base is not clear). The Policy Statement provides the following relevant commentary with respect to an RFC that "is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing:"

> [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

(*Id.*)

Here, because the hypothetical did not specify a frequency with which the Plaintiff must alternate between sitting and standing, and did not otherwise indicate that it had to be at will or at the Plaintiff's option, it is not clear from the record how the VE interpreted this restriction, or even what the ALJ intended by it. The VE did not offer any explanation why the particular jobs she identified were an exception to the Agency's view that unskilled jobs are "particularly structured so that a person cannot ordinarily sit or stand at will." And perhaps that finding is not necessary because the ALJ did not intend an "at will" option. But, without a more specifically defined hypothetical on the matter, it remains unclear what type of sit/stand option the VE considered.

The Court is not convinced that remand would be a waste of time. An ill-defined limitation was included in the hypothetical. The limitation concerned a subject that is not included in the DOT, but which erodes the occupational base. The ALJ did not inquire whether the VE's testimony was consistent with the DOT. Thus, it is not even clear that the VE was opining that the bonder position was structured so that the Plaintiff could alternate between siting and standing at will, or even whether this, or some other frequency, was intended as the appropriate limitation for the Plaintiff.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this Opinion and Order.

SO ORDERED on December 14, 2017.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT